**Gloria JOSEPH, Superintendent Western Missouri Mental Health Center, Appellant,**

v.

**Joan DISHMAN, Respondent.**

**No. WD 60230.**

Missouri Court of Appeals,
Western District.

Submitted Feb. 8, 2002.

Filed April 23, 2002.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 28, 2002.

Application for Transfer Denied
Aug. 27, 2002.

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Jeremiah (Jay) Nixon, Atty. Gen., Daryl R. Hylton, Asst. Atty. Gen., joins on the briefs, Jefferson City, for Appellant.

David Lee Neuhaus, Kansas City, for Respondent.

Before PAUL M. SPINDEN, C.J., P.J., JAMES M. SMART, JR., and VICTOR C. HOWARD, JJ.

JAMES M. SMART, JR., Judge.

Gloria Joseph, the Superintendent of Western Missouri Mental Health Center ("Western Missouri"), appeals the decision of the circuit court affirming the decision of the Personnel Advisory Board (PAB) granting Joan Dishman's application for attorney's fees following her successful appeal of her twenty-day disciplinary suspension. In this court, Ms. Joseph, in behalf of Western Missouri,[1] now asserts that the PAB erred in ruling that Western Missouri was not substantially justified in suspending Dishman. Western Missouri contends the PAB decision was unauthorized by law and, therefore, subject to reversal

---

1. As the superintendent of Western Missouri, which is a facility of the Department of Mental Health, Ms. Joseph is empowered to hire, discharge, and discipline the employees. See §§ 630.030 to 630.040, RSMo 2000. Under § 36.370, the appointing authority may, for disciplinary purposes, suspend without pay any employee for a period of up to twenty working days in any calendar year.

pursuant to Section 536.140, RSMo 2000, in that the PAB effectively applied a legal presumption against the Mental Health Center based on the result of the underlying proceeding. Western Missouri contends that this was in violation of Section 536.087.3. Western Missouri claims that the PAB decision contravenes this court's decision in *Dishman v. Joseph,* 14 S.W.3d 709 (Mo.App.2000). The decision of the PAB is affirmed.

### Factual And Procedural History

Much of the factual history related to the suspension is set out in *Dishman v. Joseph,* 14 S.W.3d 709 (Mo.App.2000) ("*Dishman I* "). Beginning on page 711 and continuing to page 714, the key facts of the underlying dispute are set out in some detail. For purposes of this opinion, however, it will be sufficient for us to provide a more general orientation to the key facts related to the suspension.

On September 26, 1995, Joan Dishman was employed as a charge nurse at Unit 5 of the hospital. That day a patient was admitted by police for treatment of delirium and psychosis. The patient was highly agitated and delirious and was placed in restraints. The patient was known to have AIDS. The patient spit blood and mucous from his mouth and threw urine and waste at hospital personnel. Because medication seemed ineffective in controlling his agitation and aggression, his physician concluded that the patient may have a brain infection and should be transferred to Truman Medical Center for a spinal fluid examination. The doctor contended that Nurse Dishman was uncooperative with his verbal order to transfer the patient. As a result of a complaint relating to the treatment of the patient, Western Missouri investigated the matter. Other issues were also raised in relation to the quality of care provided the patient, including issues as to

whether the patient was continuously monitored, whether the patient's vital signs were charted, and whether the patient's needs were appropriately cared for in accordance with policy. Following the investigation, Ms. Joseph notified Ms. Dishman that Ms. Dishman was being suspended for twenty working days without pay. The letter charged Ms. Dishman with failing to carry out a physician's verbal order to transport a client to TMC for medical evaluation. The letter also asserted that: 1) during Ms. Dishman's shift, the door to the seclusion was closed, precluding direct, continuous observation of the patient; 2) there was no charting of the patient's vital signs; 3) the patient's special needs (meal, clothing change, hygiene) were not met; 4) no attempts were made to use "other interventions" to enable the patient to move to a less restrictive level of care.

Ms. Dishman appealed her suspension, and upon denial, appealed to the PAB. On February 11, 1997, after a hearing, the PAB found that Western Missouri did not establish that Ms. Dishman failed to provide acceptable care as charged. The PAB disapproved the suspension, and ordered Ms. Joseph, the Superintendent, to rescind the suspension.

Ms. Dishman then filed an application for attorney's fees pursuant to § 536.087 RSMo 1994. The parties waived a hearing and submitted the issue on the record of the hearing. Western Missouri submitted two additional affidavits. One affidavit by an officer of Western Missouri stated that the investigation into the complaints about Ms. Dishman had included the interview of nine witnesses including Ms. Dishman. The other affidavit was from the Director of Medical Affairs for the Department of Mental Health, who opined that the failure to follow a verbal order of a physician to transfer a patient would be a violation of duty. On August 2, 1997, the PAB denied

the fee application. The PAB found there was a reasonable basis in fact for Western Missouri to have suspended Ms. Dishman and no indication that Western Missouri lacked good faith in taking the action. Ms. Dishman appealed the denial of attorney's fees. The circuit court reversed the PAB, finding Western Missouri was not substantially justified in suspending Ms. Dishman. Western Missouri then appealed, asking that the PAB decision on fees be reinstated. This court held that the PAB applied an incorrect standard in determining the issue of substantial justification. This court vacated the decision of the PAB on the attorney's fees issue and remanded the case to the PAB for application of the proper standard. On November 14, 2000, the PAB issued its new decision, awarding Dishman $22,190.00 in attorney's fees and $819.50 in expenses. After that decision was affirmed by the circuit court, Western Missouri brings its appeal to this court.

## Standard of Review

■ We review the decision of the PAB, not the circuit court's judgment. Section 536.087.7 RSMo 2000; *Dishman*, 14 S.W.3d at 715. Section 536.087 requires that:

> The reviewing or appellate court's determination on any judicial review or appeal heard under this subsection shall be based solely on the record made before the agency or court below. The court may modify, reverse or reverse and remand the determination of fees and other expenses if the court finds that the award or failure to make an award of fees and other expenses, or the calculation of the amount of the award, was arbitrary and capricious, was unreasonable, was unsupported by competent and substantial evidence, or was made contrary to law or in excess of the court's or agency's jurisdiction.

Section 536.087.7. "We defer to the PAB's findings of fact and will uphold its decision if this standard is met." *Dishman*, 14 S.W.3d at 715; *Burgdorf v. Bd. of Police Comm'rs*, 936 S.W.2d 227, 230 (Mo.App. 1996). The evidence will be considered in the light most favorable to the PAB's decision. *Dishman*, 14 S.W.3d at 715; *SGOH Acquisition v. Dep't of Mental Health*, 914 S.W.2d 402, 404 (Mo.App.1996). Questions of law are determined *de novo*. *McGhee v. Dixon*, 973 S.W.2d 847, 848 (Mo. banc 1998).

## Analysis

Western Missouri does not argue that the PAB's decision was arbitrary and capricious. Nor does Western Missouri argue that the decision was unreasonable or was unsupported by competent and substantial evidence. Rather, Western Missouri argues that the PAB's decision is contrary to law in that it effectively applied a legal presumption against Western Missouri based on the result of the underlying proceeding rather than examining the law and evidence in the light in which it reasonably appeared to Western Missouri at the time it acted. Western Missouri's argument is based upon the following language found in our previous decision:

> As noted earlier, the fact that Nurse Dishman won on the merits of her suspension does **not** create a presumption that the State's position was not substantially justified. Thus, although the State's position was determined in the underlying case to be wrong, and Nurse Dishman was reinstated, this does not necessarily mean that the State's position was not well-founded in law and fact. Rather, in reaching its fee decision, the PAB had to take into consideration not just the facts as determined against WMMHC in the underlying case, but also how these facts reasonably

may have appeared to WMMHC at the time it suspended Nurse Dishman and opposed her attempt to reverse that suspension.

*Dishman,* 14 S.W.3d at 718–19.

Western Missouri argues that the PAB failed to take heed of this court's guidance. Western Missouri argues that while the PAB properly refused to reconsider its factual findings from the underlying proceeding, it improperly refused to consider how the facts reasonably may have appeared to Western Missouri at the time of the suspension. As a result the PAB, according to Western Missouri, proceeded to reason that Western Missouri should have been aware of Dishman's supporting evidence and, therefore, was not substantially justified in its position. This reasoning, argues Western Missouri, jumps past the second part of this court's analysis and creates a legal presumption against Western Missouri. The fact that Dishman won on the merits of her suspension does not, Western Missouri argues, create a presumption that the State's position was not substantially justified. Section 536.087.3; *Dishman,* 14 S.W.3d at 718.

Had the PAB properly analyzed the case, Western Missouri argues, it would have found Western Missouri was substantially justified in suspending Dishman. Evidence to support this claim, Western Missouri argues, includes: (1) Dishman refused to follow Dr. Parrikh's verbal order to transfer the client at around 1:30, stating "Why don't you take the patient yourself to Truman Medical Center?"; (2) evidence that when the Director of Nursing came to view the patient, the door to the seclusion room was closed, even though the patient could not be adequately monitored with the door shut; (3) evidence that the vital signs were not charted, even though a prudent nurse takes vital signs more often than usual when the patient is agitated; (4) evidence that Dishman had been told to use both the nursing flow sheet and the mechanical restraint flow sheet, and that she failed to use both in a proper manner; and (5) evidence that Dishman made insufficient effort to alleviate the patient's agitation, and when asked about PRN medication, Dishman responded: "I don't know, ask Ida (an LPN under Dishman's supervision)."

Appellant argues that even though these facts could not ultimately support the twenty-day suspension, when the facts are examined from the standpoint of how things looked to Western Missouri at the time the suspension was imposed, the position was substantially justified in law and fact. We disagree, for the reasons stated below.

First, Ms. Dishman did not have the burden of proof in her action for attorney's fees. Western Missouri had the burden of establishing substantial justification for the suspension. *Dishman,* 14 S.W.3d at 715. Although Western Missouri did not have to overcome a presumption with a particular level of evidence, it had a duty to come forward with a *prima facie* case that it was substantially justified in taking the action it took. Western Missouri fails to understand that instead of coming forward with testimony explaining the investigative process and defending the reasonableness of the suspension in light of the circumstances, Western Missouri contented itself with the perfunctory filing of two affidavits offering little in the way of substance. Western Missouri fails to grasp that the PAB considered the *quality* of Western Missouri's investigation. That portion of the opinion quoted by Western Missouri for the proposition that the facts must be examined as to how they reasonably appeared to Western Missouri at the time it suspended Nurse Dishman is followed by the statement: "Also relevant was the

*thoroughness of [Western Missouri's] investigation,* which included interviews with Nurse Dishman and eight other witnesses." *Dishman,* 14 S.W.3d at 719 (emphasis added). Indeed, it was the lack of investigation that formed the basis of the PAB conclusion that there was no substantial justification for the WMMHC's action and, thus, the award of the attorney's fees.

The PAB found that a reasonable investigative body would have questioned Dr. Parrikh about the problem regarding the transfer. Further, Western Missouri, the PAB said, should be familiar with the policies of its facility regarding written orders for transfers of patients. As to the door being closed, the PAB found that psychiatric technician Terry Stussy testified about the behavior of the patient, which justified the closing of the door, and testified that the staff monitored the patient through the window in the door. The PAB further found that Western Missouri had the opportunity to interview Stussy before issuing the letter but failed to do so. A reasonable investigator, concluded the PAB, would have interviewed the person who allowed the door to be closed. The PAB also stated that the "Patient Data Form" required the patient's vital signs to be taken at 6:00 a.m. and 4:00 p.m.—times that were clearly outside of Dishman's shift. As to the charge of failing to meet special needs of the patient, the PAB found that the nursing flow sheet showed a difference in the level of documentation among the shifts: "If a level of confusion was not discovered in the investigation, at least a level of inconsistency would have been discovered." The PAB also noted that it was not known whether the persons who filled out the charts were interviewed. With regard to the patient's bed being urine soaked, the PAB noted that three witnesses were in the room prior to 2:30, and none saw urine. The board concluded: "It would have been reasonable for the investigative body to interview these witnesses." As to the charge of failing to attempt interventions to enable the patient to move to less restrictive care, the PAB found in part, "[i]t is alleged that no PRN medications had been administered since early morning and [Dishman] had not ordered a medication review. The patient's chart shows that PRN medications had indeed been administered...."

In summation, the PAB noted:

Although Mary Green testified in her affidavit that a Board of Inquiry was convened that made a thorough review of all the documentation and information, it does not appear to this Board that a thorough review of the patient's documentation took place. It appears to this Board that the Board of Inquiry did not conduct thorough interviews of witnesses and perhaps failed to interview pertinent witnesses readily at their disposal. It also appears that the Board of Inquiry and/or [Western Missouri] failed to take into account contrary evidence that was readily available to them in the form of the patient's chart, their own written policies, and the knowledge of their own witnesses. It also appears that [Western Missouri] ignored the statements of [Dishman] in her February 13th letter. [Western Missouri] failed to prove that it was substantially justified in [its] position.

 Thus, the conclusions of the PAB were based upon Western Missouri's failure to properly investigate in the manner a reasonable person would have in similar circumstances. The burden was on Western Missouri to establish substantial justification for the suspension. *Dishman,* 14 S.W.3d at 715. Even though Western Missouri bore the burden of proof on the issue, Western Missouri chose to waive a hearing and instead submitted the issue on

the record of the disciplinary hearing together with an affidavit indicating only that nine witnesses, including Ms. Dishman, were interviewed, and an affidavit stating the opinion that a nurse should follow a verbal order of a physician to transfer a patient. There was no attempt to explain which witnesses were interviewed, and why certain witnesses were selected for interviews while others were not. Also, no attempt was made to explain how other investigatory decisions were made. Western Missouri, who faced the burden of proof on the issue of substantial justification, apparently assumed that the mere fact that the investigating team interviewed nine witnesses *necessarily, by itself,* demonstrated thoroughness and objectivity in the conduct of the investigation. However, in view of the fact that some of the individuals possessing key information (including Dr. Parrikh, technician Terry Stussy, and the individuals who filled out the charts) were apparently not interviewed, and in view of the assertion by Ms. Dishman that the investigating team did not familiarize itself with Western Missouri's own policies, it might have been helpful to Western Missouri to have presented live testimony to explain the thinking behind the decisions made by the investigating team as to the conduct of the investigation. While nine witnesses sounds like a large number as an abstract proposition, we cannot say as a matter of law that the PAB was required to find that the investigation was reasonably thorough and objective *merely because* nine witnesses were interviewed. Without having more information as to the strategy of the investigating team to make sure the investigation was reasonably thorough and was objectively conducted, the PAB could reasonably have concluded that Western Missouri failed to demonstrate a sufficiently thorough and sufficiently objective investigation to ensure confidence that the result of the investigation could be viewed as substantially justified.

Western Missouri had the burden of demonstrating substantial justification for the suspension. It cannot be said that the PAB imposed a "presumption" of lack of substantial justification. The party having the burden of proof is not forced to overcome a substantive presumption. See *Dishman,* 14 S.W.3d at 718–19 (recognizing the distinction between the two concepts). All that Western Missouri was required to do here initially was to come forward with a *prima facie* case of substantial justification. In the circumstances of this case, the "bare bones" affidavits simply were not adequate to constitute a *prima facie* case in view of the fact that some measures that were considered important by the PAB were not undertaken in the investigation. One affidavit submitted by Western Missouri offered the opinion that it would be unprofessional for a nurse to refuse to comply with a verbal order to transfer a patient; there was, however, a dispute as to whether Ms. Dishman did in fact refuse such an order. The other affidavit simply reported that nine people were interviewed, without even indicating who those people were. The PAB believed that the investigation was not sufficiently thorough and sufficiently objective that it could be said that the discipline was substantially justified by the facts that were known *or should have been known* at the time the action was taken.

## Conclusion

We cannot say that the decision of the PAB was contrary to law, because the PAB did not apply a presumption against Western Missouri. The PAB simply found that Western Missouri, in waiving a hearing and resting its case of "substantial justification" on two summary affidavits providing no detail or explanation concern-

ing the investigation, failed to meet its burden of presenting a *prima facie* case. The PAB's decision to regard the affidavits as inadequate did not amount to the application of a presumption against Western Missouri. Accordingly, the decision of the PAB is affirmed.

SPINDEN and HOWARD, JJ., concur.